**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2320

MINNA-MARIE BRANDT,

Petitioner - Appellant,

v.

DAMIAN CARACCIOLO,

Respondent - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  David Shepardson Cayer, Magistrate Judge. (3:22-cv-00304-DSC)

Argued:  May 3, 2023                    Decided:  October 25, 2023

Before GREGORY, THACKER and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion.  Judge Thacker wrote the majority opinion, in which Judge Gregory joined.  Judge Quattlebaum wrote a dissenting opinion.

**ARGUED:** William Greg Fox, WINSTON & STRAWN LLP, Dallas, Texas, for Appellant.  Steven Blaine Ockerman, EPPERSON LAW, PLLC, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Lauren E. R. Watkins, EPPERSON LAW, PLLC, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

THACKER, Circuit Judge:

Minna-Marie Brandt ("Appellant") appeals the denial of her verified petition for return of her minor children from the United States to Sweden pursuant to the Hague Convention. The district court held that Appellant failed to establish a prima facie case of wrongful retention by the children's father, Damian Caracciolo ("Appellee").

Upon review, we hold that Appellant has failed to demonstrate wrongful retention of the minor children in violation of her custody rights. Therefore, we affirm.

I.

Appellant, a Swedish citizen, met Appellee, a United States citizen, in 2015 while Appellee was in Sweden. The two began an on-again, off-again relationship that continued through 2021. Throughout their relationship, the parties sometimes resided together in Sweden. Although they never married, Appellant and Appellee have two children together: a son, S.C., and a daughter, J.C. The children were born in Örebro, Sweden, in 2016 and 2019 respectively, and are Swedish citizens. Until April 16, 2021, the children lived continuously in Sweden with Appellant. Appellee also resided with them intermittently. During this time, the children took a few shorts trips to visit Appellee's family in the United States.

Appellant maintained sole custody until March 2020, when the parties reached a custody agreement. *See* Föräldrabalk [FB] [Children and Parents Code] 1994:1433 (Swed.) ("Both parents of a child shall have custody of the child from birth, *if they are married*, to each other; *otherwise the mother shall have sole custody*.") (emphasis

2

supplied). Thereafter, Appellant agrees the parties held joint custody pursuant to their agreement.

On December 30, 2020, social services in Sweden ("social services") began an investigation into the safety of Appellant's home and the children's' welfare. According to Appellant, social services advised that the children may be moved to foster care. Appellant contends that the parties then discussed Appellee taking the children to the United States for a three-month trip. In contrast, Appellee claims the parties agreed that the entire family would move to the United States and Appellee would obtain citizenship for the children.

On April 16, 2021, Appellee and the children traveled to North Carolina, where they have remained. Appellee brought along the children's passports, as well as most of their clothing and toys.[1] On July 3, 2021, Swedish social services sent a letter to the parties stating that "[s]ocial services were planning to place the children in temporary care," but that the parties had "finally [come] to the agreement that the children could live with [Appellee] and [his] family in the U.S. for some time." *Id.* at 304. On July 6, 2021, as part of the ongoing custody dispute in Sweden, a Swedish district court entered an "interim decision" confirming that the parties had joint custody of the children, pending resolution of the custody dispute. *Id.* at 341. And while it acknowledged that the children resided

---

[1] Appellee claims that Appellant also gave him the children's birth certificates. Appellee Resp. Br. 4 (citing J.A. 178, 257). However, Sweden does not issue birth certificates. Rather, Appellant obtained population registration certificates from the Swedish tax agency for the children.

with Appellee in the United States, the Swedish district court's interim order did not require Appellee to return the children to Sweden. Nevertheless, on July 7, 2021 when the children did not return to Sweden, Appellant reported that they had been kidnapped by their father. On July 21, 2021, Appellant filed an application with the Swedish Ministry for Foreign Affairs pursuant to the Hague Convention,[2] seeking return of the children to Sweden.

On March 31, 2022, the Swedish district court entered a final order awarding Appellee *sole custody* of the children and providing Appellant with a right of contact in the form of a weekly call. Thereafter, on July 6, 2022, Appellant filed a petition in the Western District of North Carolina, for return of the children. To resolve the petition, the district court held an evidentiary hearing on November 10, 2022,[3] during which the district court considered documentary evidence as well as the testimony of Appellant and Appellee. Documentation from social services worker, Madelina Barnes, supported Appellant's position that Appellee taking the children to the United States was supposed to be temporary. *See* J.A. at 64[4] (stating the parties "finally agreed, before social services, that the children would accompany [Appellee] to the United States for three months").

---

[2] The Hague Convention is an international treaty on civil child abduction intended to "secure the prompt return of children wrongfully removed to or retained in any Contracting state" to the Convention; and "to ensure the rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention on Civil Aspects of Child Abduction, art. 1, *concluded* Oct. 25, 1980, T.I.A.S. No. 11,670, at 2, 1343 U.N.T.S. 89.

[3] The parties consented to proceed before a magistrate judge pursuant to 29 U.S.C. § 636 (c).

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties to this appeal.

4

However, a social services report authored in September 2021, contained contradictory information which the North Carolina district court found persuasive. Specifically, the district court noted that the social services report concluded, "in retrospect, [Appellant] believes that [the parties] did not agree on how long [Appellee] would be in the U[nited] S[tates] with the children." *Id.* And during the evidentiary hearing before the district court, Appellant conceded that the parties had not agreed on a specific departure or return date and that "it was up to [Appellee] to decide [the departure and return dates] himself." J.A. 147.

The social services report further "substantiate[d] [Appellee's] testimony that when he brought the children to the United States, he did so pursuant to the parties' agreement with [s]ocial [services] that 'the best thing for the children would be for [Appellee] to go to the United States with them' and that if the parties had not so agreed, foster care would have been considered." *Id.* at 257 (quoting *id.* at 331). The report concluded that Appellee "is suitable as sole guardian of the children." *Id.* After considering the evidence, the district court denied Appellant's petition.

Appellant filed a timely notice of appeal of that decision.

## II.

In Hague Convention matters, we review "factual findings for clear error and legal conclusions regarding domestic, foreign, and international law de novo." *White v. White*, 718 F.3d 300, 303 (4th Cir. 2013).

5

III.

The Hague Convention's "first stated objective is to secure the prompt return of children who are wrongfully removed or retained in any Contracting State." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-01, 10505 (March 26, 1986). The United States has signed the Hague Convention as a contracting state and subsequently codified its obligations through the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001, *et seq.* Sweden is also a contracting state to the Hague Convention.

"The removal or the retention of a child is to be considered wrongful where . . . it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal." Hague Convention on Civil Aspects of Child Abduction, art. 3(a), *concluded* Oct. 25, 1980, T.I.A.S. No. 11,670, at 2, 1343 U.N.T.S. 89. "Wrongful retention refers to the act of keeping the child without the consent of the person who was actually exercising custody." 51 Fed. Reg. 10494-01, 10503. Here, the district court concluded that Appellant "failed to establish a prima fac[i]e case of wrongful retention." J.A. 260. We agree.

In order to prevail on her wrongful retention claim, Appellant must prove by a preponderance of the evidence that (1) the children were "habitually resident"[5] in her

---

[5] "Habitually resident" is not defined by the Hague Convention, but this court has adopted a case-by-case analysis whereby we consider "whether the parents share an intent to make a particular country the child's home and . . . whether enough time has passed for the child to acclimatize to the residence." *Smedley v. Smedley*, 772 F.3d 184, 186 (4th Cir. 2014).

country of residence at the time of retention; (2) the retention was in breach of her custody rights under the law of her home state; and (3) she had been exercising those rights at the time of retention. *Maxwell v. Maxwell*, 588 F.3d 245, 250 (4th Cir. 2009) (citing *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001)). The district court ruled in Appellant's favor on the first element, concluding that the children's habitual residence was Sweden. *See* J.A. 260 (district court holding that Appellant's testimony, that "the children had always returned to Sweden following earlier visits" supports the first element). As to the third element, Appellee did not contest that Appellant was exercising her custody rights at the time of retention. Therefore, the sole issue on appeal is whether Appellee retained the children in breach of Appellant's custody rights pursuant to Swedish law.

Appellant argues that the district court erred by ignoring her joint custody rights and improperly placing exclusive reliance on the March 31, 2022 order from the Swedish district court, which, despite being issued nearly a year after the alleged wrongful retention, awarded Appellee sole custody. *See* Appellant's Opening Br. at 18 (asserting that, "rather than analyzing [Appellant's] custodial rights as they existed when Appellee began wrongfully retaining the children . . . the district court chose to recognize[] and enforce[] the Swedish March 2022 order") (citation and internal quotation marks omitted) (alterations in original). However, this is not what the district court did.

The district court began by correctly identifying "the relevant time period [a]s April through July 2021," the period when the children traveled to the United States. J.A. 259. As this court has explained, "the only reasonable reading of the [Hague] Convention is that a removal's wrongfulness depends on rights of custody *at the time of removal*." *White v.*

7

*White*, 718 F.3d 300, 306 (4th Cir. 2013) (emphasis is original).[6]  Thereafter, the district court explicitly stated that "[t]he March 2022 custody order is not dispositive as a matter of law on the issue of wrongful retention . . . [b]ut the [c]ourt [did] consider that order as evidence."  J.A. 261 (internal citation omitted).

While the Hague Convention prevents a person from "insulat[ing] the child from the . . . return provisions merely by obtaining a custody order in the country of new residence, or by seeking there to enforce another country's order," it does not preclude the court from considering the facts and circumstances surrounding any such order.  51 Fed. Reg. 10494-01, 10504.  To the contrary, the Hague Convention expressly permits "the judicial or administrative authorities of the requested State[7] [to] take account of the reasons for [a decision relating to custody] in applying this Convention."  Hague Convention art. 17, T.I.A.S. No. 11,670, at 5.  Moreover, nothing in our precedent prevents the district court from considering the full panoply of circumstances surrounding the alleged retention.  This includes the March 31, 2022 order.  Therefore, the district court did not err in considering the March 31, 2022 final custody order.

---

[6] While *White* dealt with wrongful removal, other courts have applied *White* to instances of wrongful retention.  *See Velasquez v. Funes de Velasquez*, 102 F. Supp. 3d 796, 801 (E.D. Va. 2015) (stating that courts should "examine[] the parties' custodial rights at the time of retention") (citing *White*, 718 F.3d at 308); *see also Madrigal v. Tellez*, No. 15-cv-181, 2015 WL 5174076 (W.D. Tex. Sept. 2, 2015).

[7] The "requested State" refers to the country to which the children have been purportedly removed or retained.  Here, the United States is the requested State.

"Rights of custody" as defined by the Hague Convention arise by: (1) operation of law; (2) judicial or administrative decision; or (3) an agreement having legal effect pursuant to the law of the state of habitual residence of the child prior to the wrongful abduction. 51 Fed. Reg. 10494-01, 10506 (citing Hague Convention, art. 3, T.I.A.S. No. 11,670, at 2). And, pursuant to Article 14 of the Hague Convention, a court "may take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of habitual residence" in order to determine whether the removal breached Appellant's custodial rights. Hague Convention art. 14, T.I.A.S. No. 11,670, at 5.

Appellant contends that, as joint custodian of the minor children at the time of retention, Swedish law provides her with the right to "make decisions concerning the child[ren's] personal affairs," including determining where the children reside. J.A. 270; Föräldrabalk [FB] [Children and Parents Code] 1983:47 (Swed.). In support, Appellant directs this court to section 14a of the Swedish Children and Parents Code. But nothing in section 14a suggests Appellee violated Appellant's joint custody rights. Section 14a merely states, "[i]f both parents have custody of the child the court may, on application of one or both of them, decide which of the parents the child is to live with." Föräldrabalk [FB] [Children and Parents Code] 2006:458 (Swed.). Here, the parties both presented evidence that a Swedish custody dispute and child welfare investigation was ongoing during the time period preceding the purported retention. And to prevent the children from being placed in foster care, the parties agreed that Appellee would take the children to the United States. *See* J.A. 156–57 (Appellant testifying that social services "told [Appellee] and me that, because the [living] situation with [Appellee] was unbearable for everyone"

9

the children may be moved to foster care).   While the parties dispute the permanency of this stay, Appellant bore the burden of proving that Appellee wrongfully retained the children.  She failed to do so.

In reaching its conclusion that Appellant had failed to meet her burden to demonstrate wrongful retention, the district court relied on Appellant's own testimony that she, as a joint custodian, had consented to the children taking an indeterminate trip to the United States to live with Appellee.  Specifically, the district court relied upon Appellant's testimony at the evidentiary hearing that "it was up to [Appellee] to decide [the departure and return dates] himself." J.A. 147.  Thus, by Appellant's own concession, there was not a meeting of the minds that Appellee would return the children on a specific date -- or at all.

"A fundamental purpose of the Hague Convention is to protect children from wrongful international removals or retentions by persons bent on *obtaining* their physical and/or legal custody."  51 Fed. Reg. 10494-01, 10504 (citing Hague Convention, art. 1, T.I.A.S. No. 11,670, at 2 (emphasis supplied)).  But here, Appellee possessed physical and legal custody of the children at the time of the alleged retention.  And since a primary purpose of the Hague Convention is to "preserve the [pre-removal or pre-retention] status quo," we conclude that the children indefinitely staying with the joint custodial father, in the United States, was the status quo.  *White*, 718 F.3d at 306 (quoting *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001)).  As such, there was no wrongful retention in the first instance.

10

Finally, we note the practical impact of the Swedish court's final order awarding Appellee sole custody of the children. Based upon the Swedish court's conclusion as to the best interests of the children, the facts here are "atypical for a child abduction proceeding," in that, even were we to order the children returned to Sweden, Appellee would retain sole custody and could immediately return -- with the children -- to the United States. J.A. 260; *see also* Oral Argument at 9:56–11:40, *Brandt v. Caracciolo*, No. 22-2320 (4th Cir. May 3, 2023), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments (Appellant's counsel acknowledging that it would not be improper for Appellee, upon returning the children to Sweden, to take the children and immediately board a plane back to the United States).

## IV.

For these reasons, the district court's ruling is

*AFFIRMED*.

11

QUATTLEBAUM, Circuit Judge, dissenting:

I would like to join with my good colleagues in the majority. I really would. It seems the least disruptive and most efficient way to resolve this unfortunate situation. But regrettably, the law, as I see it, points in a different direction. So, I would reverse.

As Judge Thacker has ably described the background of this appeal and the applicable law, I will not repeat that information. And Judge Thacker also accurately frames the ultimate issue we must decide—has Minna-Marie Brandt established by a preponderance of the evidence that her children have been wrongfully removed or retained within the meaning of the Hague Convention. *See* 22 U.S.C. § 9003(e). The majority concludes that Brandt failed to demonstrate wrongful retention of the minor children in violation of her custody rights under Swedish law. It reasons that at the time the children left for the United States with Damian Caracciolo, Brandt agreed to their removal. In fact, the majority rightly notes that at that time, had Caracciolo not taken the children to live with him, they would likely have been placed in foster care. And finally, the majority points out that neither the June 29, 2021 order nor the March 31, 2022 order from the Swedish court indicated that Caracciolo's retention of the children was wrongful.

I agree with those facts. But they do not mean Brandt failed to show the breach of her custody rights under Swedish law. We examine her custody rights at the time of the alleged wrongful retention, which was July 2021, not as of the March 31, 2022 order. *See White v. White*, 718 F.3d 300, 308 (4th Cir. 2013). At that time, the Swedish court had granted the parties "continued joint custody of the joint children of the parties" for the time being until the question of custody was settled by a legally binding decision or an approved

12

agreement. J.A. 341. And under Swedish law, a parent with joint custody "has the right and the obligation to make decisions concerning the child's personal affairs" jointly, with the other custodian. J.A. 270; Föräldrabalk [FB] [Children and Parents Code] 1983:47; 2005:430 (Swed.). Similarly, both parents with joint custody have the right to participate in deciding which parent the children live with. Föräldrabalk [FB] [Children and Parents Code] 2006:458 (Swed.).

In July 2021, Brandt attempted to exercise the right to partake in the decision about the return of the children to Sweden. She continually sought information from Caracciolo and his parents about when the children would be returning. Then, on July 21, 2021, having received no assurances about their return, Brandt applied with the Swedish Ministry for Foreign Affairs under the Hague Convention for the return of the children to Sweden.

Under § 11 of Sweden's Children and Parents Code, she, as a parent with joint custody, had a right to make decisions concerning the children's personal affairs. To be sure, as a parent with joint custody, Brandt did not have superior rights to those of Caracciolo. But when, as here, the parents with joint custody cannot agree on custody, the Swedish courts must decide. *See* Föräldrabalk [FB] [Children and Parents Code] 2006:458 (Swed.) ("If both parents have custody of the child, the court may, on the application of one or both of them, decide which of the parents the child is to live with."). Absent such a decision from the Swedish court, Caracciolo's refusal to return the children to Sweden deprived Brandt of her right to make decisions concerning the children's affairs. And as of July 2021, no court had decided which parent the children would live with.

13

Based on all of this, I fail to see how Brandt has not made a prima facie case that her custody rights were breached based on the plain language of Article 3 of the Hague Convention. And the Hague Convention and the International Child Abduction Remedies Act ("ICARA") command that if a petitioner's custody rights have been breached, the child must be returned to their country of habitual residence. *See Abbott v. Abbott*, 560 U.S. 1, 5 (2010).

In this case, that result is far from satisfying. In its March 31, 2022 order, the Swedish court awarded Caracciolo permanent custody of the children. Given that, it seems pointless at best and disruptive at worst to return the children from the United States to Sweden. But under our *White* decision, a subsequent custody cannot inform our analysis of Brandt's custody rights at the time of the alleged wrongful retention. *White*, 718 F.3d at 308 ("The . . . order, which was in effect at the time of the child's removal, therefore controls this case."). We look at the parties' custody rights as of July 2021. And at that time, Brandt had joint custody and all the rights related to that status. So, the Hague Convention and ICARA require us to order the children to be returned to Sweden.

But that does not mean the March 31, 2022 order has no bearing on what happens after the children are returned to Sweden. Based on that order, it appears Caracciolo could, after touching down with the children in Sweden, immediately return to the United States with them. Since he has now been awarded full custody, taking the children back would not be wrongful under Swedish law.

Going through those motions may seem like a waste of time and money. It may also unnecessarily disrupt the children's lives. I wish all of that could be avoided. But as I read

14

them, the Hague Convention and ICARA are clear. And I am not permitted to turn a blind

eye to their requirements because they produce an inefficient, or even undesired, result in

this case.

I would reverse the district court's order.